Thank you your honor. May it please the court, this case, this case involves a unique circumstance among all of the lawsuits in which Maricopa County's former county manager David Smith participated. It was the only case that involved a settlement with a sitting member of the county board of supervisors. The county didn't expect to finalize a settlement of this case without approval of a disinterested member of the board of supervisors and of the county treasurer. That was a condition that the county deemed necessary regardless of whether it turned out it was legally necessary or not. And I'm afraid this case has gotten hung up over the question of whether it was legally necessary or not. When you say it was necessary, though, it was it was not incorporated in the terms of the authorization, right, to make settlements. Your honor, you're referring to the the board resolution? Yes. Yes, the board resolution did not address specific cases. That is correct. It authorized the initiation of... Well, it contained no limitation like that. That's the point. No, because your honor, the limit that the limitation was specific to this particular situation. Well, it only happened that way. You know, you can be, you might have had in Maricopa County two or three supervisors bring to it. Who knows? I mean, before the fact, right? Could have happened. There were, in fact, several supervisors who brought claims, yes. All right. Yes. Then so, and they all could have gone to settlement. Several of them did go to settlement. All right. Then why is this the only case to which it applies? You know, the limitation you're speaking of. Your honor, the other settlements happened afterwards, but the terms I'm referring to did apply to those settlements. When you say the terms, you mean they were approved by the board? The subsequent settlements, one was approved by a disinterested member of the board and the county was no longer a sitting member of the board, but it went to the full board at a full public hearing. Yes, your honor. Now, that was all after this. After everybody knew there was a dispute over it. Sure. Yeah. All right. Okay. So, but what Judge Teshim is asking about is the resolution that was passed by the board of supervisors directing the county manager to settle some cases. And so the county manager is further directed and authorized to take all actions necessary to fully implement this resolution, including but not limited to adjudicate the claims included in the alternate in the alternative dispute resolution process, entering into claimants was a member of the board of supervisors. There's nothing in this resolution that accepts a binding resolution with a member of the board. Yes, and indeed, your honor, the county did enter into a well, this refers to arbitration and mediation agreements. The county did agree to so it wasn't a binding arbitration. Binding arbitration or mediation agreement. Yes. And did in fact, in effect, enter into a mediation agreement with Supervisor Wilcox. They mediated with Supervisor Wilcox. And then entered into an agreement with it. It's a binding agreement. A binding agreement is a binding agreement. I mean, I don't think there's any doubt about a binding agreement, what that means. No, your honor, but this this board resolution does not refer to to settlement agreements. It refers to mediation agreements. Well, that's what a mediation does. Mediation results in a settlement agreement. And I should point out, your honor, that this resolution also, I mean, you can see what the intent of the board was, because it authorizes a sole source contract to hire Kenneth Feinberg, who, as you may know, is a lawyer. And that's what they anticipated. And anticipated simply that Mr. Skelly would be sort of provide assistance to Mr. Feinberg. None of that took place. Well, that's too bad. But maybe you would have had to pay more. Who knows? Right. Yeah. But, you know, you did say somewhere, I don't know where, but put in something about any kind of approvals that the parties think necessary. Yes. Which is another odd way to write something. The parties didn't think this was necessary. Maybe one party did. But I mean, I'm just following what Judge Teshimot was asking. I don't understand how, in the face of this resolution, you're questioning the authority of the accounting manager to settle this case through this settlement program. Well, in fact, your honor, there is nothing in the resolution. If we're talking about the resolution, there's nothing in the resolution that actually authorizes the settlement of cases without any further approval. It doesn't refer to further approvals. No, but this was a basis on which the kind of manager entered into numerous settlements, right? Well, several, your honor. Several. I know no one questioned the manager's authority to enter those settlements. Well, and the only authority the manager had was this resolution. Correct. Correct. Correct. So isn't that acceptable to everybody that this authorizes the accounting manager to negotiate resolutions on his own? And the agreement in this case, you know, had some limitation, but it's not the limitation that had to go to the full board or anything like that. It was just a limitation that was required by state law, right? Well, I don't even want to argue, your honor, that it was required by state law. I mean, that's been a subject of dispute. No, I mean, no, I mean, it Your honor, when parties, when parties reach an agreement or negotiate an agreement, hoping to reach an agreement, and that, by the way, your honor, is one of the problems with giving any weight with admitting an email from the mediator. But that's a whole separate issue. But when the mediator, he's the one who created the language in his own email. He's the one who said this was subject to any further approvals deemed necessary by the parties. The testimony, your honor, is uncontested. David Smith, the former county manager, testified that the – in response to a question put to him by Mr. Campbell, it had to do with whether or not there was going to be a condition subsequent that before payment could be made, there would have to be the approval of another board member and the county treasurer. Mr. Smith testified, when the county attorney formalized his opinion, I believe that it was persuasive within the county that it would apply. And that's the point of my statement, your honor, that regardless of whether ARS Section 11626 legally applied or not, which is what the district court focused on, the fact of the matter is that at least one party to this mediation believed that it did. And when Mr. Skelly wrote this – the email that contained that language, he was writing that email. And, of course, our position is none of this should have been subject to an evidentiary hearing and admissible. But when he wrote that email, he was writing that email because he had been told that the county believed that this was necessary. If the county – as a matter of pure contract law, if the county believed it was necessary and if the mediator wrote that into the – into this email of April 9, it doesn't matter whether – you can't make that subject to – whether it's a week, a month, two months, two years of litigation. You can't make it subject to further litigation as to whether it is in fact legally necessary or not. That's what the county had in mind. It wanted that approval. It made that clear. And regardless of what the resolution may have said, as far as the authority of the county manager, the actual – the actual communications made that perfectly clear, that it was subject to any approvals deemed necessary by the parties. Well, it's not perfectly clear. Nothing is perfectly clear. I understand we had a by a public employee. I don't know whether the county consulted counsel before it wrote this resolution or the settlement document, but it's hardly perfectly clear. For instance, if you want to make it perfectly clear, you talk about any approvals deemed necessary by either party. It says it's got to be deemed necessary by the parties. That's not perfectly clear. If you wanted to make perfectly clear, you could have said subject to the approval of a member of the Board of Supervisors. That would have made it clear. Nothing very clear about the way this is all drafted, but it does seem if you're going to enter into this process, you would do it on the basis of the authority. You would find that the Board of Supervisors, the full Board of Supervisors, gave to its county manager, and that was to enter into binding agreements pursuant to mediation or arbitration, and that they could be – that once you reach an agreement pursuant to all of that, it would be binding. That would seem to be fairly clear. Yes, Your Honor. But again, the condition – even assuming this was admissible, even assuming that there was any kind of agreement, the agreement, which I hesitate to refer to as such, contained a condition. And if the county manager had authority, he certainly then had authority to impose conditions, which – this is not his language, it's the mediator's. Your Honor, I would love to argue the privilege issue. I see I'm down to about two-and-a-half minutes, and I think I had better reserve that time. We'll give you the full two-and-a-half minutes. Thank you, Your Honor. Your Honor, it's Colin Campbell on behalf of Mary Rose Wilcox. Judge Neal Wake did a full evidentiary hearing on our motion to enforce the settlement agreement. He made fact findings that, in our view, are bulletproof. They can't possibly argue that his fact findings are clearly erroneous. Number one, Judge Wake ruled orally and then in his well-reasoned opinion that David Smith, the county manager, had actual authority and also apparent authority. He took testimony from David Smith with respect to this fact. He had the resolution from the Board of Supervisors. Mr. Smith had settled other cases without Board approval, but not a supervisor's case. This was the first supervisor's case. As counsel mentioned, there were two supervisors later that settled that aren't part of the record. But the resolution didn't limit it with respect to supervisors. You know, the resolution – in fact, the purpose of the resolution was the Board felt they So they wanted to push this away from themselves into some sort of alternative dispute resolution. What about Mr. Leonard's point in response to, I think, a question that Judge Reinhardt asked that, well, the resolution really doesn't say – doesn't expressly authorize the county manager to enter into settlements? Well, I think the language of the agreement that says he can enter into binding arbitrations and binding mediation does give him that authority. Judge Wake did say, even if it was ambiguous, based on the testimony you heard from Mr. Smith and the course of action of Mr. Smith and the Board, he thought it was clear that he did have actual or apparent authority to enter into this agreement. The second – So after this evidentiary hearing, Judge Wake made a finding of fact that the this resolution gave him actual authority. Actual authority, and if not actual authority, he had apparent authority by his settlement of other cases. Judge Wake also found as a fact that Mr. David Smith made an offer that was spelled out in an e-mail and that the offer was accepted by Mary Rose Wilcox's attorney. He also found, as a matter of fact, that in this case, that it required further approvals deemed necessary by the parties. He found that ambiguous, and under Arizona law, he took testimony from Mr. Smith as to what Mr. Smith meant, and he had affidavits from Ms. Mary Rose Wilcox's attorneys as to what they thought it meant, and he found as a fact that both sides meant the same thing. They both testified to the same thing, that if ARS 11-622 applied to this case, that would require further approvals. The position of Mary Rose Wilcox was that ARS 11-622 did not apply. It's a statute that applies only to contract claims, not tort claims. And in fact, what I was surprised by the argument this morning is in the evidentiary hearing before Judge Wake, the county did not even argue that 11-622 applied. In fact, he was very specific. He said, are you abandoning that claim? Are you waiving that claim? And the county attorney who was representing the county said, we are not making that argument. So you will see in Judge Wake's written ruling, he says the one thing that the parties had put in there, whether 11-622 was required or not, had been abandoned and was not being raised by the county. So if you take those fact findings, that David Smith had authority, that he made an offer, that it was accepted, that the only condition had been abandoned, he also found as a matter of law that 11-622 doesn't apply to tort claims. And there's the question, as I understood it from the county, was I'm going to say I've got my numbers mixed up. The provision by the county or the county wherever it is, charter or whatever, that the, here it is, I think. Oh, that is 626. It's 626. I'm sorry. And the county stated that they abandoned that argument? Yes. If you look at the evidentiary transcript, that's one of the first things Judge Wake asked them. Are you making this argument that 11-626 applies to this settlement? And the attorney then was Mr. Lamar, and Mr. Lamar said, I'm not making that argument. And Judge Wake said, I deem that argument abandoned. And he writes that in his written opinion, and he notes it in the evidentiary transcript. So to stand up today and say, in light of the fact it was abandoned below, that they want to comply with 11-626, I find, you know, difficult to take in light of this record. Well, you know what the problem is. Well, I won't say what the problem is. But this is a situation where there could be a little buyer's remorse. Well, Judge, in our view, there clearly was buyer's remorse here. You know, what happened in Maricopa County with respect to our former county attorney who is now disbarred was a very highly publicized political matter. And they wanted to cut it off, and so they cut it off. Yes. You're correct. It's very clear in the transcript that the county said, explicitly conceded, that it did not apply to the settlement, and therefore would not have been needed. In fact, Judge, I thought the argument they were bringing to this Court was whether the Arizona mediator's privilege made inadmissible the offer and acceptance. That was the principal argument, and they didn't get much of a chance to make it because we jumped on them with the asking about the 626. And, you know, if they had said what they said in the district court, we're not making that argument. We're abandoning it. They would have gotten a lot of questions on the privilege argument. Right. Now, on privilege, Judge, we think the Arizona statute is very clear. It creates an exception when you have to present the record of what the actual settlement is. And actually, the subsections of the statute, G2 and G3, talks about what the writing is. It allows any sort of electronic medium for the writing, so the e-mail offer and acceptance is sufficient. And for signature, it allows any sort of electronic acknowledgment of a sign or symbol to constitute the signature. And Judge Wake found that the e-mail and the e-mail acceptance was more than the mediator's statute with respect to a written agreement. And then he took testimony on authority. He took testimony on interpretation. This is a — and in many ways, this is as simple a contract case as you could find. Okay. Thank you. Thank you, Judge. I'll try to be very quick. First of all, Mr. Campbell is simply wrong. When he says — when he attributes the meaning to the discussion at the hearing about 11 — ARS 11-626, what Mr. Lamar, who was at the time representing the county, said was, we're not pursuing the legal applicability of it. That's the only question that came up. It had nothing whatsoever to do with the condition that was written into Mr. — Mr. Skelly's e-mail. Nothing whatsoever. It had nothing to do with whether the county deemed it necessary, but only whether it was legally necessary. Well, that's — I don't understand your argument at all. Mr. Lamar said, having not argued the position, Your Honor, I am saying for the record, on behalf of Maricopa County, you can assume for purposes of this argument that it does not apply. The Court, I take that as conceded, and we will move on to other things. Right. It does not apply. Not that it wasn't a condition — the approval wasn't a condition written into the — into Mr. Skelly's e-mail. It's not the same thing. Whether or not it turned out after the fact that — And when you — when he told the judge, we can move on to other issues, and he said, that doesn't apply, I haven't raised it in my argument, I haven't raised it in my brief, we can talk about other things, that means we — it is dispositive of the case? Yes. It doesn't go at all to whether — All right. You're free under the First Amendment to say whatever you'd like. The other point, Your Honor, is there is no signed writing that meets — Mr. Campbell says this is a simple question of contract interpretation. There is no signed writing that meets the requirements of ARS 12-2238, which is the remediation statute, or, in fact, of Federal Local Court Local Rule 83.7, which requires a writing that is either signed by counsel of record or an unrepresented party. No counsel of record signed anything, and no unrepresented party, because the county was represented, signed anything. It simply doesn't meet the requirements of a signed agreement, which is required by the statute. There simply isn't any. Are you saying that a lawyer cannot bind the party or that the lawyer didn't in this situation bind the party? No, Your Honor, in fact, a lawyer can, because the local rule says signed by counsel of record. Counsel of record did not sign anything. This is just an e-mail. This is an e-mail that is sent by Mr. Skelly to Mr. Campbell. It was clearly being considered by the court. I'm sorry, Your Honor? It was clearly being considered by the court.  And that's counsel. Inquiry was made of counsel, and counsel answered the inquiry. That's the point Judge Reinhart was asking you to answer. I'm sorry. Perhaps I misunderstood that, because my point was simply that there is no signed writing. I'm not talking about 626 at this point. I'm just talking about any kind of signed writing that would meet the requirements of either local Rule 83.7 or the Arizona Mediation Statute. There simply isn't any. The reason I'm smiling is because there's such a thing called the clever lawyer's argument. If you – if the lawyer can bind by statement and the court moves on to another point based on the lawyer's statement, can the lawyer then come back and say, yes, I said it. It's very precisely what I said, but ha-ha, there's no writing. I obviously didn't make my point clearly, Your Honor, because I'm not referring at all to the colloquy in court concerning the applicability of ARS 11-626. I'm just talking about whether there's any kind of signed writing that can be enforced, period. Forget 626. Any kind of signed writing that can be enforced by a court. There simply isn't one. There is – there is no signed writing. The Arizona Mediation Statute requires – the only time an agreement can be admissible is if it is in the form of a signed agreement, signed by the parties, and the Arizona District Court Local Rule 83.6 says the only time – the only binding agreement you can have is one that is either signed by the attorneys of record or by an unrepresented party. Did you raise that in the district court? I – I do not believe, Your Honor, that it was raised in the district court. If you haven't raised it in the district court, haven't you waived it? I think this court has discretion to consider it, Your Honor, and it's – Well, the district court considered at least a similar provision about Arizona Rule of Thorough Procedure 80D, right, which also – Yes, that's the Arizona rule. Which requires a signed writing, but it's a similar type of rule. But so, I don't know, maybe it's a – maybe it's a rule of convenience in the sense that it makes it much easier for a court to enforce the settlement if it's writing. But that's – isn't that the reason Judge Wake held an evidentiary hearing, because there was no writing and he wasn't sure what the settlement was? Well, Your Honor, Judge Wake held an evidentiary hearing and took evidence and even wanted the mediator's testimony. And as you know, the mediator refused to come and testify. Never showed up, right. As did not some supervisors. Correct. That he wanted there, right? I don't recall, Your Honor, that he asked for supervisors to be there, but I could be wrong on that. I don't think so. All right. But he held an evidentiary hearing. He heard whoever the parties were able to produce. Yes. And then he concluded that, you know, that there was a binding agreement, right? I think evidenced by that e-mail or something like that, he found. Yes. And he referred to rule – Arizona Rule 80D, which of course has no applicability whatsoever. Right. Because – Well, it depends. You mean just like Arizona Rule of Mediation Privilege has no application? Well, I would respectfully disagree, Your Honor. It's not a state court proceeding. That's why the Arizona Rule of Procedure 80D doesn't apply. I would submit to you, Your Honor, that every practitioner in Arizona believes that the Arizona Mediation Statute applies to any mediations they do. Even though it's a – suppose it's ordered by the federal court. Well, yes. It's still governed by Arizona law? Yes. And the only claim is a federal claim? Well, there was no federal claim involved in this particular issue, Your Honor. Well, sure, there's a 1983 claim, isn't there? There was in the case, yes. There were also state law claims. But my point, Your Honor, is simply that, in fact, Judge Wake said, this is purely a state law issue. There's no evidence – Oh, the state law issue is, you know, the validity of the agreement. I agree with that. Yes. That's the state law issue. All right. I understand your position. Thank you, Your Honor. Thank you. Thank you. All right. The case just argued will be submitted.
judges: Farris, Reinhardt, Tashima